No. 77,660

STATE OF KANSAS, *Appellee*, v. BARRY CLARK, *Appellant*.

(949 P.2d 1099)

Opinion filed December 12, 1997.

*Debra J. Wilson*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with her on the brief for appellant.

*Terra D. Morehead*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This is a direct criminal appeal from a first-degree murder conviction. According to his pretrial statements and other trial evidence, the defendant Barry Clark shot and killed Thejuan Hollinshed. The defendant contends that the trial court erred (1) by failing to instruct on the lesser included offense of voluntary manslaughter based upon "sudden quarrel," (2) by instructing the

jury to continue deliberation after it was deadlocked, and (3) by admitting hearsay concerning the defendant's knowledge about another shooting. We find no merit in these contentions and affirm.

On the night Hollinshed was killed, Shalon Finley invited several friends for dinner, including the defendant and Hollinshed. Eddie Jenkins, a friend of the defendant, also attended the dinner party. According to Finley, Hollinshed and the defendant seemed to be interacting well and there did not appear to be any problems between them.

At the party, the defendant showed several people a 9 mm. pistol he carried on his person. Later in the evening, the defendant asked Hollinshed to go outside and smoke a marijuana joint with him. Hollinshed agreed and left the party to join the defendant.

Finley testified that Hollinshed had "thrown up" gang signs in the past and held himself out to be a member of the Bloods. She also testified that the defendant had in the past made signs indicating that he was a member of the Crips.

Shirron McCord, a stepniece of Finley, also attended the party. She confirmed that the defendant invited Hollinshed outside to smoke a joint. She testified that she went outside to talk to another woman, heard gunshots, and went to the front of the house and hid behind a tree. She saw Hollinshed lying on the ground. The defendant was standing over Hollinshed, shooting him with a pistol. The defendant then ran up some stairs onto a nearby street. McCord admitted that when questioned by the police, she did not tell them that she saw the defendant shoot Hollinshed because she was afraid. Later, however, she told the whole story to Detective Gardner, who was her sister's husband. McCord stated that she did not see Jenkins with the defendant during the shooting.

Detectives Kenneth Allen and Clyde Blood of the Kansas City, Kansas, police homicide division testified that they took two recorded statements from the defendant concerning the murder. Allen testified that the two statements were necessary because the defendant indicated that he had lied in the first statement.

The State proposed to play both recorded statements to the jury. The defendant's attorney objected on the grounds that certain statements that had been made by the defendant on the recording

concerning a murder of another person, Richard Jasper, were hearsay and were not relevant. The district court overruled the objections, and the statements were played for the jury.

In his first recorded statement, the defendant told police that he went to the party and while there he did some drugs and got drunk. The defendant stated that he had a 9 mm. pistol in his possession and that the pistol belonged to Jenkins, a friend of his who was also at the party. He told police that he gave the gun back to Jenkins before leaving the party.

According to the defendant's first statement, Hollinshed asked the defendant about getting a marijuana joint. The defendant told Hollinshed that he was leaving the party. As the defendant was walking away from the party, Hollinshed caught up with the defendant and walked with him. They went to the house of a girl that the defendant knew, but she was not home. The defendant and Hollinshed then began walking back to the party.

The defendant told police that as he and Hollinshed got to the parking lot of the housing project where the party was located, Jenkins called him over. The defendant and Hollinshed walked over, and suddenly Jenkins pulled a gun and shot Hollinshed in the back a number of times. Both the defendant and Jenkins then ran from the scene.

The defendant told police that he suspected Jenkins might have killed Hollinshed because Hollinshed and two others had shot at the defendant a few hours earlier that night. The defendant indicated that Hollinshed and the others had been "wet on water" (high on drugs) and had not recognized the defendant at the time that they had shot at him. Further, the defendant told police that Jenkins was a Crip and Hollinshed a Blood and they had been shooting at each other a month earlier.

Based on information given to them by Shirron McCord, police again questioned the defendant. This time, the defendant told a different story. The defendant told police that when Jenkins called to him and he and Hollinshed went over to talk with Jenkins, Jenkins hit Hollinshed in the face. Hollinshed then put his hands in his pocket as if he was going to pull a gun, and the defendant drew his gun and shot him repeatedly. The defendant told police that

Hollinshed was "turning around" as the defendant shot him. The defendant stated that he then gave the gun to Jenkins and Jenkins shot Hollinshed while Hollinshed was lying on the ground. The defendant and Jenkins then fled the scene.

The police then asked the defendant whether the shooting was related to the murder of Richard Jasper. The defendant stated that it was not. When asked whether he had any information on the subject of that murder, the defendant stated that he had spoken to a man named Kenny, who had supposedly killed Jasper, and also to the mother of Kenny's child, who had told him that Hollinshed had taken the purse of Kenny's girlfriend and blamed the theft on Jasper. Kenny then killed Jasper.

Dr. Erik Mitchell, a forensic pathologist, testified that his autopsy determined that Hollinshed died of multiple gunshot wounds in the back. He identified seven separate entry wounds. On cross-examination, he testified that some of the wounds were consistent with the victim turning around when shot.

The defendant presented no evidence. At the instructions conference, both the State and the defendant's counsel indicated that they had gone through the possible lesser included offenses, and the defendant's counsel stated that he agreed with the court's proposed instructions.

Two and a half hours after the jury began deliberations, the presiding juror informed the court that the jury was deadlocked and she did not see any chance of reaching a verdict. The court asked the jurors whether any of them thought further deliberation would be helpful, and 7 of the 12 jurors raised their hands. The judge then asked the attorneys outside the presence of the jury whether they had any objection to his asking the jurors to continue deliberations. The defendant's counsel objected. The judge then asked the jury to return and attempt to deliberate again, stressing that the jurors were not under a time constraint or under pressure to reach a verdict. After continuing deliberations for 1 hour that day and then 1 hour the next day, the jury returned a verdict finding the defendant guilty of first-degree murder. The defendant was sentenced to life imprisonment without parole eligibility for 25 years.

## Instruction—Lesser Included Offense

The facts upon which the defendant relies for his claim that a lesser included offense instruction on voluntary manslaughter under the theory of sudden quarrel should have been given are these: In his second pretrial statement to police, the defendant said that Jenkins hit Hollinshed, who then reached in his pocket. This action prompted the defendant to shoot Hollinshed because the defendant thought the victim was reaching for a gun. The quarrel, if any, was between Jenkins and Hollinshed, not the defendant and Hollinshed. The court did instruct on voluntary manslaughter under the theory that the defendant acted upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person.

A trial court's duty to instruct on a lesser included offense arises where the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict in accord with the defendant's theory. *State v. Moncla,* 262 Kan. 58, 74, 936 P.2d 727 (1997). Where, as here, there is no evidence supporting a theory of "sudden quarrel," there is no duty to instruct.

## Coercion—Trial Court's Instruction After Jury Reported That It Was Deadlocked

It is a fundamental rule that the judgment of an individual juror is not to be subjected to the pressure of coercive or oppressive acts and statements on the part of the court, but is to be exercised free from judicial threat, harassment, constraint, or compulsion. *State v. Earsery,* 199 Kan. 208, 211, 428 P.2d 794 (1967). The rule protects the fundamental right to a fair trial and seeks to prevent the risk of the jury being coerced to make decisions it might not otherwise make or the court violating the right of jurors to disagree without being penalized therefor. *State v. Basker,* 198 Kan. 242, 247, 424 P.2d 535 (1967).

The following brief statement of facts amply supports our conclusion that the defendant's claim of judicial coercion is without merit. Two and a half hours after the jury began deliberating, the presiding juror informed the court that the jury was deadlocked and that she did not see any chance of reaching a verdict. The

court asked the jurors whether any of them thought further deliberation would be helpful. Seven of the 12 jurors raised their hands. The court then asked the attorneys outside the presence of the jury whether they objected. In response to the court's question, the defendant's counsel lodged an objection to any attempt to ask the jury to deliberate further.

The court then asked the jurors to return and attempt to deliberate again, stressing that they were not under a time constraint or under pressure to reach a verdict. The judge instructed the jury:

"Ladies and Gentlemen, in light of the thoughts I heard expressed by all of you, I am going to ask you to return one more time and to attempt to deliberate again. You are not under any time constraint or pressures at all here to reach a verdict and you may take whatever time is necessary. So I'm going to ask you to return once again to your deliberations room and begin deliberating once more."

After continuing deliberations for 1 hour that same day and for 1 more hour the following day, the jury returned a verdict finding the defendant guilty of first-degree murder. Contrary to the defendant's contention, the above facts establish an exercise of sound judicial discretion.

Admission of Hearsay

As part of the taped confession played to the jury, the State introduced the defendant's statement wherein he told police that he had talked to the person who had been involved in the murder of Richard Jasper. The exact conversation between the defendant and the police is as follows:

"Q: Do you know anything about the homicide of a man named Richard Jasper?
"A: Yes.
"Q: What do you know about that?
"A: Just know that I heard off the streets that Thejuan was supposed to have— his girlfriend's purse—and they killed him."

Later, the conversation again turned toward the Jasper murder:

"Q: Okay, now let's go back to this other homicide on Richard Jasper. You seem to have some knowledge of that. Can you tell me what you know about it?
"A: Well, I talked to the guy who was supposed to have done it, Kenny. I talked to his baby's mother, and she told me a lot about it. She told me about that Thejuan was supposed to have snatched her purse, a girl named Jamie's purse, and said that Richard did it and they killed, I mean he killed Richard."

The defendant objected to the admission of the above statements at trial on the grounds of hearsay and relevancy. The court determined that the evidence would be admitted, although noting that if the question was asked on the stand, it would not be relevant.

K.S.A. 60-460 provides that evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible, with certain exceptions. The unique facts in this case are interesting because the statement sought to be introduced is that of Kenny and the mother of his baby relating to a crime committed by Kenny, and the person relating the hearsay statement is in fact the defendant, who now objects to its admission. There is no question that the statements that were admitted were hearsay, in that neither Kenny or the mother of his baby were available to testify as to what they told the defendant. Further, these statements do not fit any of the exceptions to hearsay found in K.S.A. 60-460.

We agree with the trial court's conclusion that the evidence was not relevant. The only possible relevancy would be to show that the defendant had some motive to shoot Hollinshed. However, no other evidence was offered by the State to establish this motive, and the statements themselves do nothing to establish such a motive. Thus, the statements should have been excluded.

However, errors that do not affirmatively cause prejudice to the substantial rights of the complaining party do not require reversal when substantial justice has been done. *State v. Johnson*, 255 Kan. 140, 148, 871 P.2d 1246 (1994). The defendant is unable to point to any way that the admission of the hearsay evidence caused prejudice. The defendant claims that the admission of the evidence allowed the jury to speculate about the connection between himself and Jasper as a possible motive for the shooting. However, from the entire record, there was no connection established between the defendant and Jasper. In fact, there was no evidence presented to the jury that the defendant even personally knew Jasper, much less that the defendant and Jasper were friends and that the defendant would kill to obtain vengeance on the person responsible

for Jasper's death. The admission of hearsay by the trial court did not prejudice the substantial rights of the defendant.

Affirmed.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.