IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,806

STATE OF KANSAS,
*Appellee,*

v.

HAROLD GLEN FORD, JR.,
*Appellant.*

SYLLABUS BY THE COURT

1.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits the criminal prosecution of a defendant who is not competent to stand trial.

2.

Under K.S.A. 22-3302(1), if a district court finds a reason to believe a criminal defendant is not competent to stand trial, the proceedings must be suspended and a hearing conducted to determine the defendant's competency.

3.

A procedural competency claim is based on a district court's alleged failure to hold a competency hearing or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent.

1

4.

That part of the holdings in *State v. Murray*, 293 Kan. 1051, 1053-54, 271 P.3d 739 (2012), and *State v. Davis*, 281 Kan. 169, 174-75, 180, 130 P.3d 69 (2006), indicating that a failure to comply with K.S.A. 22-3302 is jurisdictional is disapproved. Accordingly, a motion to correct an illegal sentence is foreclosed as a mechanism for correcting a procedural competency claim.

5.

In a challenge to a criminal conviction based on a procedural competency claim arising from an alleged violation of K.S.A. 22-3302, a movant bears the initial burden to prevent summary dismissal by establishing, from the record or other evidence, there was reason to believe that he or she was incompetent to stand trial and that the requirements of K.S.A. 22-3302 had not been satisfied. If the movant meets this initial burden, the burden shifts to the State to prove compliance with the mandate of K.S.A. 22-3302 to suspend proceedings, evaluate competence, and conduct a competency hearing.

6.

In a proceeding challenging whether a district court complied with K.S.A. 22-3302, a judicial finding that the State met its burden of proving compliance is reviewed on appeal for substantial competent evidence. On the other hand, a district court's finding that the State failed to meet its burden is a negative finding. As such, an appellate court will overturn the decision only if the district court arbitrarily disregarded undisputed evidence or relied upon an extrinsic consideration such as bias, passion, or prejudice.

7.

If a district court failed to comply with K.S.A. 22-3302 during pretrial or trial proceedings, the State may at a later date request a retrospective competency hearing, which may be able to rectify the previous procedural error. The State must establish that a

retrospective competency hearing is feasible—*i.e.*, whether the available evidence is such that a retrospective hearing could be meaningful. Where a retrospective competency hearing and determination is not feasible, the previous procedural violation compels reversal of a defendant's conviction because there can be no assurance that a defendant was not tried while incompetent.

8.

To determine whether a retrospective competency hearing is feasible, the district court should consider (1) the passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals who were in a position to interact with defendant before and during trial, including the trial judge, counsel for both the State and defendant, jail officials, and both expert and nonexpert trial witnesses.

9.

Appellate courts apply an abuse of discretion standard when reviewing a district court's determination of whether a retrospective competency hearing is feasible. A judicial decision amounts to an abuse of discretion when a decision is (1) arbitrary, fanciful, or unreasonable, (2) based on an error of law, or (3) based on an error of fact.

10.

Once a district court determines a retrospective competency hearing is feasible, the court must determine the ultimate question of whether the criminal defendant was competent during the underlying proceeding.

11.

When a movant files a procedural challenge arising from a district court's failure to comply with K.S.A. 22-3302, the movant must be present at a retrospective competency hearing unless he or she waives that right.

Appeal from Johnson District Court; PETER V. RUDDICK, judge. Opinion filed July 31, 2015. Reversed and remanded.

*Richard Ney*, of Ney & Adams, of Wichita, argued the cause, and *Krystal L. Vokins*, of Cornwell & Vokins, of Olathe, was on the briefs for appellant.

*Steven J. Obermeier*, senior deputy district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Consistent with due process protections imposed by the United States Supreme Court, if a district court has a reason to believe a defendant is incompetent to stand trial, K.S.A. 22-3302 requires the court to suspend criminal proceedings and conduct a competency hearing. In 1992, a district court presiding over Harold Glen Ford, Jr.'s, criminal case—in proceedings we will refer to as *Ford I*—ordered and received a competency evaluation. But there is no record of a subsequent competency hearing. Yet the *Ford I* court did not suspend proceedings and instead accepted Ford's guilty plea and sentenced him.

More recently—in proceedings we will refer to as *Ford II*—Ford filed a motion in district court to correct an illegal sentence, arguing the *Ford I* court lacked jurisdiction to convict him. The *Ford II* court conducted a retrospective competency hearing, found that Ford had been competent when he entered his plea, and denied Ford's motion. Ford

4

appealed from that decision. His appeal and the State's arguments raise issues regarding: (1) whether a motion to correct an illegal sentence can be used to attack a conviction and (2) whether the district court appropriately applied *State v. Murray*, 293 Kan. 1051, 271 P.3d 739 (2012) (*Murray I*), and *State v. Davis*, 281 Kan. 169, 130 P.3d 69 (2006), when it determined a retrospective competency hearing was feasible and could rectify the original error of failing to comply with K.S.A. 22-3302.

We hold that future movants cannot use a motion to correct an illegal sentence to claim a violation of K.S.A. 22-3302. We also hold that under the facts of this case a meaningful retrospective competency hearing is feasible and can rectify the district court's failure to comply with K.S.A. 22-3302 during *Ford I*. But a movant has a right to be present at a retrospective competency hearing. Because Ford was not present for the *Ford II* hearing and there is no indication he waived his right to be present, we reverse and remand for additional proceedings.

FACTS AND PROCEDURAL BACKGROUND

In 1992, after the State charged Ford with first-degree murder (or felony murder in the alternative), aggravated robbery, and aggravated burglary, he filed a motion under K.S.A. 22-3302 to determine his competency to stand trial. In the *Ford I* proceedings, a district court granted the motion the next day, finding "there is reason to believe that the defendant is incompetent to stand trial in this matter and/or unable to aid in his defense." On November 19, 1992, Dr. Robert Reitz of the Johnson County Mental Health Center sent Ford's completed mental health evaluation to the parties and to the court. He concluded:

> "In the opinion of this examiner, Mr. [Ford] is currently competent to proceed and to stand trial as defined by K.S.A. 22-3301. He appears to appreciate the seriousness of his current

5

situation and to be capable of informing his attorney of his desires regarding his defense. There is no evidence of a mental disease or defect which would interfere with [his] ability to participate fully in the legal process."

The district court file-stamped the evaluation on November 23, 1992.

Ford's case proceeded. On February 12, 1993, the district court accepted Ford's guilty pleas to felony murder, aggravated robbery, and aggravated burglary. Subsequently, the district court sentenced Ford to life imprisonment for felony murder, 15 years to life for aggravated robbery, and 5 to 20 years for aggravated burglary. Each sentence was to run consecutively.

Approximately 17 years later, Ford filed a motion to correct an illegal sentence, leading to the *Ford II* proceedings in the district court and this subsequent appeal. He alleged "a hearing was never held and [he] was never examined by a mental health professional" despite the *Ford I* court's order to determine his competency. Because the *Ford I* court failed to suspend proceedings and conduct a competency hearing as required by K.S.A. 22-3302, he argued his conviction and sentence were void for lack of jurisdiction. The State responded, attaching a written report of Ford's 1992 mental health evaluation. The State did not, however, point to anything in the court file or record that indicated Ford had received a competency hearing.

The *Ford II* court ordered a hearing on Ford's motion. Counsel represented Ford at the hearing, but Ford was not personally present. His attorney pointed out that the docket sheet in the *Ford I* proceedings did not include a specific mention of a competency hearing. Further, neither the court reporter notes nor a transcript could be located for Ford's preliminary hearing and at least one other hearing. The available transcripts did not contain a judicial determination of Ford's competency.

The State presented Ford's 1992 competency evaluation and the testimony of Ford's defense attorney and the assistant district attorney who prosecuted Ford's case. Ford's defense attorney testified that the evaluation would have been sent to the parties and the court. He further testified:

> "I am sure that before we proceeded to the next phase of the litigation, there would have either been—either at that time I may have withdrawn my motion to determine competency or we would have waived any further addressing of the competency issue once we received determination by a competent psychiatrist or psychologist that the individual was competent."

On cross-examination, Ford's counsel conceded he had no specific recollection of the hearing and there was no waiver or withdrawal of the motion on file. He could only guess that he might have withdrawn the *Ford I* competency motion orally during one of the undocumented hearings.

The assistant district attorney who prosecuted the *Ford I* proceedings testified to her recollection of standard court procedure after a court-ordered competency evaluation. She indicated the parties and the court would typically discuss the results of the evaluation at the first hearing following its receipt. At the hearing, the parties would have acknowledged receipt of the evaluation, then defense counsel would have withdrawn the motion to determine competency or the court would have made a competency determination. But the prosecutor could not specifically remember what happened in Ford's case nor confirm that this standard procedure had been followed.

After hearing the testimony of Ford's defense attorney and the assistant district attorney, the district court in the *Ford II* proceedings found that "a competency evaluation was conducted in this case; however, no documentation was found in the docket sheet or

7

other documentation suggesting there was a hearing conducted to determine the competency of Harold Glen Ford, Jr., as required by K.S.A. § 22-3302(1)."

The *Ford II* district court also explored the issue of Ford's substantive competency during the *Ford I* proceedings. The State relied heavily on Ford's November 1992 competency evaluation. According to that evaluation, Ford had "no history of previous psychiatric hospitalizations or treatment." He presented "no evidence of a thought disorder or other psychotic process such as persecutory delusions, grandiosity and auditory or visual hallucination." Ford understood the nature of the adversarial process, and was "keenly aware of the severe consequences he faces should he be convicted." Importantly, Ford appeared "able to assist his attorney," and the evaluating psychologist concluded that Ford was competent "to stand trial as defined by K.S.A. 22-3301."

Along with the evaluation, Ford's defense counsel and the prosecutor testified regarding their observations of Ford. Both indicated they never had a concern that Ford was incompetent. Defense counsel explained he asked for a competency hearing after Ford's mother repeatedly questioned why her son would have committed murder and wondered if there was a mental health issue. Counsel indicated he filed the motion in part for her and also out of a general abundance of caution given the serious charges. The prosecutor testified she routinely agreed to defense motions for a mental evaluation and the court routinely granted those motions. Beyond recalling routine practices, she also specifically remembered Ford, in part because she met with him to see whether he would testify against his codefendant after entering his plea. The prosecutor indicated she had no concerns about Ford's mental capacity during his case or at their later meeting.

Based on the evaluation and the attorneys' testimony, the *Ford II* court denied Ford's motion to correct an illegal sentence, concluding Ford had been competent and that his convictions and sentences were valid.

Ford's attorney failed to timely appeal the denial of Ford's motion to correct an illegal sentence. Eventually, the district court granted Ford's request to appeal out of time. We have jurisdiction under K.S.A. 2014 Supp. 22-3601(b)(3) (permitting a direct appeal to supreme court when life imprisonment imposed).

ANALYSIS

Ford relies on both constitutional and statutory arguments to assert the *Ford I* court violated his procedural due process rights by not conducting a competency hearing. "[T]he Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992); see *Drope v. Missouri*, 420 U.S. 162, 171-72, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) (the common-law prohibition of trying an incompetent person is "fundamental to an adversary system of justice" and is conceptually similar to the prohibition on trying a defendant in his or her absence). Given the importance of the substantive right, "state procedures must be adequate to protect [it]." *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966).

In 1970, Kansas developed and codified procedures at K.S.A. 22-3302 to protect incompetent defendants from prosecution. *Davis*, 281 Kan. at 176. That statute provides, in part:

> "If, upon the request of either party or upon the judge's own knowledge and observation, the judge before whom the case is pending finds that there is reason to believe that the defendant is incompetent to stand trial the proceedings *shall be suspended and a hearing conducted to determine the competency of the defendant*.
>       . . . .

9

"(4) *If the defendant is found to be competent, the proceedings which have been suspended shall be resumed.*" (Emphases added.) K.S.A. 22-3302(1), (4).

This court discussed K.S.A. 22-3302 and the United States Supreme Court cases in *Davis*, which bears procedural similarities to this case in that Jeffrey L. Davis and Ford each raised a procedural competency claim. "A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent." *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001); see *James v. Singletary*, 957 F.2d 1562, 1570-71 (11th Cir. 1992).

In Davis' underlying criminal case, his attorney, like Ford's, had filed a motion to determine his competence. With no objection from the State, the magistrate judge ordered the evaluation. But there was never an evaluation of Davis' competency or a judicial determination that Davis was competent. Notwithstanding the omissions, Davis proceeded to trial where a jury convicted him of two counts of rape. After Davis' direct appeal, he filed a motion to correct an illegal sentence, arguing the district court lacked jurisdiction because it failed under K.S.A. 22-3302 to suspend proceedings to determine if he was competent. Davis also argued on appeal there was a "legitimate dispute" as to his competency—meaning he also raised a substantive competency claim. *Davis*, 281 Kan. at 176.

In light of the fact that the district court did not suspend proceedings or conduct a hearing under K.S.A. 22-3302(1), this court concluded that "the district court had no jurisdiction." *Davis*, 281 Kan. at 180. Procedurally, the jurisdictional conclusion was critical because Davis challenged his convictions and sentences through a motion to correct an illegal sentence. And a motion to correct an illegal sentence is a proper avenue

10

for an argument that the district court illegally imposed a sentence without the requisite jurisdiction to do so. *Davis*, 281 Kan. at 174; see *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014) (sentence is illegal when it [1] is imposed without jurisdiction, [2] does not conform to statutory provisions, or [3] is ambiguous with respect to the time and manner in which it is to be served).

To support the conclusion that the district court lacked jurisdiction, the *Davis* court relied on a California Court of Appeals decision, *People v. Ary*, 118 Cal. App. 4th 1016, 1021, 13 Cal. Rptr. 3d 482 (2004) (*Ary I*), and specifically the following language from that opinion:

> """Under section 1368 of the Penal Code the trial court has no power to proceed with the trial once a doubt arises as to the sanity of the defendant. In trying defendant without first determining at a hearing his competence to stand trial, the court both denie[s] to defendant a substantial right . . . *and pronounce*[*s*] *judgment on him without jurisdiction* to do so. *In such cases the error is per se prejudicial*." [Citation omitted.]'" (Additional emphasis added.) *Davis*, 281 Kan. at 180 (quoting *Ary I*, 118 Cal. App. 4th at 1021).

Hence, Davis utilized a motion to correct an illegal sentence, which he could file at any time, to raise an issue of subject matter jurisdiction, which courts can address at any time. See K.S.A. 22-3504 ("The court may correct an illegal sentence at any time."); *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010) ("Subject matter jurisdiction may be raised at any time . . . ."). It so happened that the same error that arguably deprived the court of the jurisdiction to sentence Davis also deprived the court of the jurisdiction to convict him. Following *Davis*, our subsequent decision in *Murray I*, 293 Kan. at 1053-54, also allowed Randall A. Murray to use a motion to correct an illegal sentence to ultimately challenge his convictions based on a failure to conduct a competency hearing.

11

ISSUE 1:  *May Ford use a motion to correct an illegal sentence to correct invalid convictions?*

As in *Davis* and *Murray I*, Ford filed a motion to correct an illegal sentence, arguing his convictions and sentences were void because the district court lost jurisdiction during the *Ford I* proceedings when it did not conduct a competency hearing. Clearly, *Davis* and *Murray I* support Ford's use of a motion to correct an illegal sentence as an appropriate procedural avenue for challenging his convictions. Nevertheless, the State asks us to revisit *Davis* and *Murray I*, pointing out a conflict between those and other decisions where we have held a defendant cannot use a motion to correct an illegal sentence to attack a conviction.

Since our decision in *Davis*, we have frequently and consistently held that the relief available through a motion to correct an illegal sentence is correction of a sentence, not reversal of a conviction. See, *e.g.*, *State v. Gilbert*, 299 Kan. 797, 801, 326 P.3d 1060 (2014); *Taylor*, 299 Kan. at 6; *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013). Because Ford ultimately seeks reversal of his convictions, allowing him to do so through a motion to correct an illegal sentence would be contrary to these decisions.

Thus, as the State points out, tension exists between these post-*Davis* decisions and our holdings in *Davis* and *Murray I*. Ford argues these opinions are distinguishable because *Davis*' and *Murray I*'s outcome depended on the conclusion that the district court lacked jurisdiction, a conclusion supported by the California Court of Appeals decision in *Ary I*, 118 Cal. App. 4th 1016. We question whether that is an adequate distinction. See *Trotter*, 296 Kan. 902-04 (rejecting use of motion to correct illegal sentence where movant argued district court lacked jurisdiction to sentence and convict because of defective complaint). But more fundamentally, there is reason to question whether a procedural error under K.S.A. 22-3302 deprives a court of jurisdiction.

Since *Ary I*, the California Supreme Court recognized and embraced the "emerging view" around the country that a court retains jurisdiction to determine a procedural competency claim. *People v. Lightsey*, 54 Cal. 4th 668, 705, 143 Cal. Rptr. 3d 589, 279 P.3d 1072 (2012). California decisions over the years had reached conflicting conclusions on the issue. Compare *People v. Superior Court (Marks)*, 1 Cal. 4th 56, 65-67, 2 Cal. Rptr. 2d 389, 820 P.2d 613 (1991) (procedural failure under California's competency statute does not "oust the trial court of subject matter jurisdiction pending an evaluation of the defendant's competence") with *People v. Hale*, 44 Cal. 3d 531, 541, 244 Cal. Rptr. 114, 749 P.2d 769 (1988) (failure to conduct competency hearing "rendered the subsequent trial proceedings void because the court had been divested of jurisdiction to proceed pending express determination of the competency issue") and *Ary I*, 118 Cal. App. 4th at 1021 (same).

1.1. *Ford's arguments do not raise an issue of jurisdiction.*

In concluding a court retained jurisdiction, despite failing to comply with competency procedures, the California Supreme Court reasoned that there is not "any constitutional imperative for imposing a jurisdictional limitation [under the] circumstance[s]" in either decisions of the United States Supreme Court or in cases interpreting California's statute. *Marks*, 1 Cal. 4th at 67-68. Consequently, the *Marks* court concluded the failure to conduct a competency hearing does not implicate "jurisdiction in any fundamental sense." 1 Cal. 4th at 70.

Like the *Marks* court, we find nothing in the United States Supreme Court's precedent to suggest the failure to follow the procedure set out in a state's competency statute deprives a court of jurisdiction. Nor is K.S.A. 22-3302 phrased in terms that implicate jurisdiction. Thus, we may follow this emerging trend of recognizing that a court does not lose jurisdiction if it fails to comply with procedures relating to a determination

13

of competency. Given the undercutting of the support relied on in *Davis*, we disapprove of *Davis'* statement that "the district court had no jurisdiction" simply because of a procedural error based on the failure to suspend criminal proceedings until a competency hearing was conducted. 281 Kan. at 180; see *State v. Murray*, 293 Kan. 1051, 1054-55, 271 P.3d 739 (2012) (*Murray I*) (following *Davis*).

Nevertheless, as we will discuss in more detail, in *Davis* we determined the procedural error could not be rectified through a retrospective competency hearing, which required us to reverse Davis' conviction. *Davis*, 281 Kan. at 184. That holding resulted from a determination that under the circumstances of Davis' case—primarily because no competency evaluation had been performed—a retrospective competency hearing was not feasible. 281 Kan. at 183. More generally, however, we recognized that a retrospective competency hearing could potentially rectify the procedural error of failing to conduct a competency hearing. 281 Kan. at 180-81.

For clarity, we pause to explain that the California Supreme Court's disapproval of the reasoning in *Ary I* on the issue of jurisdiction does not mean that the *Ary I* court's endorsement of retrospective competency hearings, which the *Davis* court also relied on, is suspect. *Davis*, 281 Kan. at 181 (citing *Ary I*, 118 Cal. App. 4th at 1028). In fact, the California Supreme Court cited *Ary I* when it endorsed the use of retrospective competency hearings. *Lightsey*, 54 Cal. 4th at 706-07. Furthermore, the *Davis* decision cited other authority as well, including the United States Supreme Court's statement that a retrospective competency hearing is permissible, though "'inherent[ly] difficult[].'" *Davis*, 281 Kan. at 181 (quoting *Drope*, 420 U.S. at 183). Other Supreme Court cases have adopted the same view. See *Pate*, 383 U.S. at 387 (emphasizing difficulty of conducting retrospective hearing); *Dusky v. United States*, 362 U.S. 402, 403, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (same); see also *McGregor*, 248 F.3d at 962-63 (citing Supreme Court cases and stating that "[r]etrospective competency hearings are generally 'disfavored' but are

14

'permissible whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant'").

Most courts recognize the ability to conduct a retrospective competency hearing. Some courts treat the retrospective competency hearing as a harmless error inquiry. Others do not, viewing it instead as a substitute hearing. The difference in these approaches can influence such things as the burden of proof and the allocation of the burden of persuasion. See *Bryan v. State*, 935 P.2d 338, 347-48, n.4 (Okla. Crim. 1997) (discussing various approaches and collecting cases). Compare *James*, 957 F.2d at 1570-71 with *People v. Ary*, 51 Cal. 4th 510, 513, 520, 120 Cal. Rptr. 3d 431, 246 P.3d 322 (2011) (*Ary II*). The parties have not raised those questions in this case, and we refrain from addressing them without the benefit of briefing. For our purposes today, it is sufficient to know that in *Davis* we too held that the failure to follow K.S.A. 22-3302 sometimes may be rectified by a retrospective competency hearing. *State v. Davis*, 281 Kan. 169, 181, 130 P.3d 69 (2006).

We also pause to reaffirm the distinction made in *Davis* between the harmless error proceedings when the procedural error is corrected before judgment is entered—the situation that arose in *State v. Boorigie*, 273 Kan. 18, 41 P.3d 764 (2002)—and post-judgment retrospective competency hearings—the situation in *Davis* and this case. See *Davis,* 281 Kan. at 179-80. Jurisdiction to rectify the procedural error exists in both situations.

1.2. *K.S.A. 60-1507 is the sole basis for relief.*

Without the underlying predicate of a lack of jurisdiction, Ford, who relied solely on a lack of jurisdiction as the basis for his motion, may no longer pursue the procedural remedy of a motion to correct an illegal sentence. See *Taylor*, 299 Kan. at 8 (stating three

grounds for motion for illegal sentence). Furthermore, Ford faces the additional burden of overcoming our post-*Davis* holdings that a motion to correct an illegal sentence cannot be used to set aside a conviction. These two factors lead us to hold that if a district court violated K.S.A. 22-3302 by failing to suspend criminal proceedings and conduct a competency hearing after finding reason to question the defendant's competency, the error alleged is procedural and not jurisdictional and a motion to correct an illegal sentence is not an avenue through which to reverse the conviction. Any contrary holding in *Murray I*, 293 Kan. at 1053-54, and *Davis*, 281 Kan. at 174-75, is overruled. Future movants seeking to reverse a conviction because of an alleged violation of K.S.A. 2014 Supp. 22-3302 must utilize the procedures in K.S.A. 60-1507 or be subject to summary dismissal. This will, of course, impose the time limits of K.S.A. 60-1507(f).

In this case, Ford filed his claim via a motion to correct an illegal sentence, just as *Murray I* and *Davis* allowed. Our disapproval of the *Murray I* and *Davis* holdings that allowed use of a motion to correct an illegal sentence under these circumstances alters the law in effect when Ford filed his motion. Nevertheless, this change would typically apply to bar Ford's motion. See *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013) (change in the law acts prospectively, applying "'to all cases . . . pending on direct review or not yet final'").

Treated as a motion under K.S.A. 60-1507, the 1-year limitation imposed by subsection (f)(1) would bar Ford's claim. But he has not had an opportunity to argue whether the manifest injustice exception would save his claim. See K.S.A. 60-1507(f)(2). Nevertheless, we invoke the exception under the unique circumstances of this case because today we are also filing a decision arising from Murray's motion to correct an illegal sentence. *State v. Murray*, ___ Kan. ___ , ___P.3d ___ (No. 110,214, this day decided) (*Murray II*). Murray's current appeal arises from district court proceedings conducted pursuant to our order of remand in *Murray I*, 293 Kan. 1051, in which we held Murray

could use a motion to correct an illegal sentence to challenge a failure to comply with K.S.A. 22-3302. Under the law of Murray's case, he may seek the same relief Ford sought, do so for the same reasons Ford alleged, and do so through a motion to correct an illegal sentence. *Murray II*, ___ Kan. at ___, slip op. at 7. Likewise, we elect to allow Ford's case to proceed alongside Murray's given the inequities that would result when two litigants in similar situations with cases being decided on the same day are subject to disparate outcomes.

We now turn to the merits of Ford's claim.

ISSUE 2: *Has Ford established a due process error sufficient to reverse his convictions and sentences?*

As *Murray I*, 293 Kan. at 1055, explains:  "Every defendant who moves to correct an illegal sentence is not entitled to an evidentiary hearing." Instead, for Ford to receive an evidentiary hearing on his motion to correct an illegal sentence, he bore the same initial burden he would bear if he had filed a motion under K.S.A. 60-1507:  He had to prevent summary dismissal by establishing, from the record or other evidence, that there was a reason to believe he was incompetent to stand trial and a reason to believe the requirements of K.S.A. 22-3302 had not been satisfied. See 293 Kan. at 1055; see also *State v. Hoge*, 283 Kan. 219, 223, 150 P.3d 905 (2007) ("Kansas appellate courts have treated motions to correct illegal sentences like K.S.A. 60-1507 motions—where district courts may summarily deny the petitioner's motion if the motion, files, and records of the case conclusively show the petitioner is not entitled to relief."). We will first examine whether Ford met that burden and then discuss the remaining procedural steps and our standard of review.

2.1. *Ford met his threshold burden.*

Here, the *Ford II* court appropriately determined from its preliminary examination of the record that Ford had met his threshold burden. Ford alleged in his motion to correct an illegal sentence that the *Ford I* court never conducted a competency hearing despite an order to determine Ford's competency. Indeed, nothing in the court files or records disputes that allegation.

As a result, the *Ford II* court appropriately set Ford's motion for further proceedings. See *Murray I*, 293 Kan. at 1053-55; *Hoge*, 283 Kan. 219, Syl. ¶ 2.

2.2. *The State failed in its burden to prove that Ford received a competency hearing.*

In those additional proceedings, the burden shifted to the State to prove compliance with K.S.A. 22-3302's mandate to suspend proceedings, evaluate competence, and conduct a competency hearing. *Murray I*, 293 Kan. at 1051-52, 1055 ("[T]he State must come forward with evidence to fill in the gaps in the reconstructed record to show that a competency hearing occurred."); see *Davis*, 281 Kan. 169, Syl. ¶ 3 (no evaluation performed or hearing conducted).

Here, at the *Ford II* hearing, the State came forward with evidence but could not establish that Ford received a competency hearing in *Ford I*. If the *Ford II* court had made a factual finding that Ford received a competency hearing, we would review the decision for substantial evidence. See *State v. Miller*, 293 Kan. 535, 547, 264 P.3d 461 (2011). But here, after considering the State's evidence, the *Ford II* court found no record of a competency hearing. When reviewing a negative finding—a finding that a party failed to meet its burden—appellate courts consider whether a district court arbitrarily disregarded

undisputed evidence or relied upon an extrinsic consideration such as bias, passion, or prejudice. *Hamel v. Hamel*, 296 Kan. 1060, 1078, 299 P.3d 278 (2013).

In this appeal, the State does not point to any undisputed evidence that the *Ford II* court ignored. Instead, the State argues the *Ford I* court could have judicially determined Ford's competency during one of the hearings for which a transcript could not be reproduced. The State notes that the *Ford I* defense and prosecuting attorneys confidently expressed their belief that the competency hearing would have occurred, even though neither one had a specific memory of one.

This possibility—even if likely—does not mean the *Ford II* court arbitrarily disregarded undisputed evidence. The State's burden was not to prove that Ford *could* have received a competency hearing but that he *did* in fact receive one. *Murray I*, 293 Kan. at 1055. And the available transcripts and the witnesses failed to indisputably establish that Ford received a competency hearing. Nor is there any indication the *Ford II* court relied on an extrinsic consideration. Consequently, we affirm the district court's implicit determination that the State failed to meet its burden under *Murray I*—*i.e.,* to "come forward with evidence to fill in the gaps in the reconstructed record to show that a competency hearing occurred." 293 Kan. at 1055.

2.3. *The State's alternative arguments also fail.*

Alternatively, the State argues the *Ford II* court should not have considered Ford's challenge for three reasons. First, the State contends the law presumes Ford to have been competent. See *State v. Hedges*, 269 Kan. 895, Syl. ¶ 7, 8 P.3d 1259 (2000). As the State argues, this legal presumption initially attaches when charges are filed. Yet, the *Ford I* files and record establish that a competency hearing was statutorily required—*i.e.*, that the district court had found "reason to believe that the defendant [was] incompetent to stand

19

trial" under K.S.A. 22-3302(1). This finding rebutted the presumption, and the *Ford I* court's finding is not subject to collateral attack. The record alone does not provide assurance that Ford was competent.

Second, the State argues that Ford invited the due process error by proceeding with the case. True, a defendant cannot invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). This court applied the invited error rule when evaluating a procedural competency claim in *Boorigie*, 273 Kan. 18. In *Boorigie*, after the court granted a request for a competency determination under K.S.A. 22-3302, a defendant asked the court to proceed with an arraignment rather than suspend proceedings. 273 Kan. at 26-27. Unlike *Boorigie*, the available *Ford I* record does not show whether Ford asked to proceed without a competency hearing during one of the untranscribed hearings. Given the incomplete record, we simply cannot know whether Ford invited any error.

Third, the State argues that *Davis* created a new rule of law—one requiring the suspension of proceedings until competency is determined—that should not apply retroactively to Ford's case. As we have noted, it is generally true that changes in the law apply prospectively and only to cases on direct review. See *Mitchell*, 297 Kan. at 124-25. That said, K.S.A. 22-3302 has been the law since 1970 with minor amendments not relevant to this appeal. K.S.A. 22-3302, not *Davis*, demands the suspension of criminal proceedings pending a competency hearing if the district court has found a reason to question the defendant's competency. See *Davis*, 281 Kan. at 176. The error in Ford's case arose under the law in effect during *Ford I*; *Davis* did not create new law on that point.

We conclude the *Ford II* court appropriately considered the *Ford I* court's failure to suspend proceedings under K.S.A. 22-3302 and conduct a competency hearing. Moreover, the *Ford II* court did not arbitrarily disregard undisputed evidence in finding a procedural

20

error for failure to comply with K.S.A. 22-3302. Without the hearing mandated by K.S.A. 22-3302, Ford's procedural rights were violated. See *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966) (requiring adequate procedures to satisfy due process); *Davis*, 281 Kan. at 176 (compliance with K.S.A. 22-3302 satisfies due process requirements).

2.4. *A retrospective competency hearing is feasible.*

The procedural error does not necessarily compel a court to vacate Ford's convictions, however. Instead, as we have previously noted, a meaningful retrospective competency hearing may rectify the procedural error. *Davis*, 281 Kan. at 181. The next step in determining whether that "may rectify" turns into a "does rectify" is for the State to request a retrospective competency hearing and establish the feasibility of retrospectively determining the defendant's competence. Where a retrospective competency hearing and determination is not feasible, the procedural violation compels reversal because there is no assurance that a defendant was not tried while incompetent. *Davis*, 281 Kan. at 184; see *Drope v. Missouri*, 420 U.S. 162, 183, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *Pate*, 383 U.S. at 387; *Dusky*, 362 U.S. at 403; *Murray I*, 293 Kan. at 1055.

In *Davis*, this court adopted the following factors from *McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001), as the proper considerations for determining the feasibility, or potential meaningfulness, of a retrospective competency hearing:

"'(1) [T]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial, including the trial judge, counsel for both the

21

government and defendant, and jail officials. [Citation omitted.]'" *Davis*, 281 Kan. at 181 (quoting *McGregor*, 248 F.3d at 962-63).

Here, the *Ford II* court implicitly concluded that a meaningful retrospective competency hearing was feasible when it ruled on the question of whether Ford had been competent during the *Ford I* proceedings. In doing so, the *Ford II* court conflated the feasibility determination with the ultimate substantive question of whether Ford was competent when he entered his 1993 plea. This conflation is not surprising since, as a practical matter, a district court will often need to hear the substance of available evidence in order to apply the *McGregor* factors and render a feasibility determination. We, therefore, do not fault the *Ford II* court for not clearly separating the analytical step of feasibility from the ultimate determination of Ford's competence. But we note that a court could preliminarily evaluate feasibility without hearing all the evidence. See *Hoge*, 283 Kan. at 224-25 (once court determines motion cannot be summarily denied, court may conduct a preliminary hearing to obtain additional information before an evidentiary hearing or may proceed directly to evidentiary hearing). In either situation, we urge judges to assess the *McGregor* factors on the record in a separate step of analysis.

Even though the *Ford II* court did not explicitly distinguish those findings, we assume the court made the necessary factual findings to support its decision that a retrospective hearing was feasible in Ford's case. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012) (when party fails to object to adequacy of district court's findings and conclusions, appellate court can presume district court found all facts necessary to support judgment).

An appellate court reviews the threshold determination of feasibility for an abuse of discretion. See *Davis*, 281 Kan. at 181; see also *Hooker v. United States*, 70 A.3d 1197, 1202-03 (D.C. 2013) (reviewing finding on the feasibility of a retrospective competency

22

hearing for an abuse of discretion); *State v. Blancher*, 170 N.C. App. 171, 174, 611 S.E.2d 445 (2005) (same). A judicial decision amounts to an abuse of discretion when a decision is (1) arbitrary, fanciful, or unreasonable, (2) based on an error of law, (3) or based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

Ford has not established that the *Ford II* court abused its discretion by concluding that a retrospective competency hearing was feasible. Granted, as to the first *McGregor* factor regarding the passage of time, here, considerable time had passed. But in contrast to the situation in *Davis*, where there was no contemporaneous competency evaluation, the *Ford II* court had—and heavily relied upon—Ford's November 1992 competency evaluation. The report noted Ford's lack of prior psychiatric hospitalizations or treatment and the lack of any reported history or indication that he suffered from a thought disorder or other psychotic process. Importantly, the evaluator found that Ford understood the nature of the adversarial process and its consequences, was able to assist his attorney, and was competent to stand trial as defined by K.S.A. 22-3301(1)(a)-(b) (defining "incompetent to stand trial" to mean being unable to (1) "understand the nature and purpose of the proceedings against him," or (2) "make or assist in making his defense"). Thus, the second *McGregor* factor—the availability of contemporaneous medical evidence—weighs heavily in support of the district court's decision. See *Davis*, 281 Kan. at 182-83; *Maxwell v. Roe*, 606 F.3d 561, 576-77 (9th Cir. 2010); *McGregor*, 248 F.3d at 963; see also *Pate*, 383 U.S. at 387 (in retrospective hearing, "expert witnesses would have to testify solely from information contained in the printed record").

As to the third *McGregor* factor—statements by the defendant in the trial record, that is, the record of proceedings from pretrial through sentencing—the State asks us to consider Ford's statements at the plea hearing. The State contends these statements illustrate that Ford understood the nature, purpose, and consequences of the proceedings and his available defenses. While this may be true, the record is not clear that the transcript

was available to the *Ford II* court. Therefore, in an abundance of caution, we will not factor this argument into our review.

Nevertheless, along with the contemporaneous evaluation, the fourth and final *McGregor* factor weighs strongly in the State's favor. Ford's defense counsel testified that Ford never gave him any concern that he was incompetent. "'Defense counsel is often in the best position to determine whether a defendant's competency is questionable.'" *McGregor*, 248 F.3d at 960 (quoting *Bryson v. Ward*, 187 F.3d 1193, 1201 [10th Cir. 1999]); see also *Davis*, 281 Kan. at 178 (defense counsel was in best position to determine whether client's competency was suspect). Similarly, the prosecutor testified she never had any concern that Ford was incompetent.

Contrary to Ford's argument, these considerations make this case quite different from *McGregor*, where the court determined a retrospective competency hearing was not feasible. McGregor had a substantial documented history of mental illness, was not properly medicated throughout his trial, and exhibited odd behaviors during court proceedings; moreover, McGregor's counsel made "repeated and vehement contentions that [McGregor] was unable to assist in his own defense." 248 F.3d at 955. No similar circumstances exist in this case. Here, the record contains no evidence that Ford ever displayed any signs of incompetency. Ford's counsel testified that he requested the evaluation not because he noticed signs of incompetence but, rather, because of Ford's mother's inquiry and because he thought it best to have an expert opinion. And like both counsels' assessments of Ford's competence, Dr. Reitz' contemporaneous evaluation revealed that in his expert opinion there were no competency concerns, latent or otherwise.

Ford also cites *McGregor* for a more specific argument:  that the *Ford II* court placed too much weight on Dr. Reitz' 1992 evaluation. He notes that in *McGregor*, during the underlying proceedings, two experts had found McGregor competent and those

evaluations would be available at a retrospective hearing. Yet, the court determined a retrospective hearing in *McGregor* would not be feasible. Once again, we view McGregor's situation as distinguishable from Ford's. In *McGregor*, one of the two doctors had based his opinion only on the 5-year-old notes of another doctor. The second doctor had found McGregor competent during the 45 minutes in which the doctor examined him but limited his opinion to that 45-minute period. He expressly refused to opine as to McGregor's competence at any other point in time, indicating that McGregor's competency fluctuated and recognizing McGregor was competent only so long as he was properly medicated. The Tenth Circuit Court of Appeals explained in detail the complicated issues with McGregor's medications and noted that medications and dosages were adjusted throughout McGregor's trial. 248 F.3d at 956, 963. In contrast, the *Ford II* court had no reason to question the adequacy, thoroughness, or unqualified conclusions expressed by Dr. Reitz in his report of Ford's competency.

Based on the evidence presented, the district court did not abuse its discretion in determining this case presented a circumstance where a meaningful retrospective competency determination could rectify a procedural due process error under K.S.A. 22-3302.

2.5. *Ford's retrospective competency hearing did not rectify the violation.*

Once a district court determines a retrospective competency hearing is feasible, the court must determine the ultimate question of the criminal defendant's competency during the underlying proceeding. Here, the *Ford II* court found that Ford was competent at the time he entered his plea in *Ford I*.

Ford attacks the *Ford II* court's conclusion on this point, arguing that even if the *Ford II* court properly considered the *McGregor* factors the hearing did not rectify the due

process error. At oral argument, Ford's appellate counsel emphasized that Ford was not present at the *Ford II* hearing.

Significantly, K.S.A. 22-3302(7) mandates a defendant's personal presence at a competency hearing. The same right must apply in a retrospective hearing meant to rectify the due process error stemming from the failure to conduct the original hearing. If a retrospective hearing is to be meaningful, Ford must be present and have the opportunity to challenge the State's evidence of his competence. Unless a defendant, at some point, has had the opportunity to be present at a competency determination, we cannot say a procedural competency error has been rectified. See *People v. Lightsey*, 54 Cal. 4th 668, 710, 143 Cal. Rptr. 3d 589, 279 P.3d 1072 (2012) (the retrospective hearing must be a fair consideration of competence). We, therefore, hold that a movant must be present at the stage of the proceedings where a court actually conducts a retrospective competency hearing unless the right is knowingly and voluntarily waived. With regard to the potential waiver, we remind district courts of the United States Supreme Court's observation that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial. [Citation omitted.]" *Pate v. Robinson*, 383 U.S. 375, 384, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966); see *State v. Davis*, 281 Kan. 169, 175, 130 P.3d 69 (2006).

The record before us does not demonstrate that Ford had the opportunity to participate or to waive his presence. We, therefore, agree with his contention that the hearing in this case did not meaningfully address the procedural error caused by the *Ford I* court's failure to comply with K.S.A. 22-3302. Consequently, we remand. The district court may first determine whether Ford knowingly and voluntarily waived his presence at the hearing. If not, the district court must either conduct a retrospective competency hearing at which Ford is present or the court must accept Ford's waiver of his right to be present.

26

To summarize, a district court applies a four-step analysis on a procedural challenge under K.S.A. 22-3302:  (1) whether the movant survives summary dismissal; (2) whether the previous proceedings satisfied the requirements of K.S.A. 22-3302; (3) whether a retrospective competency hearing is feasible; and (4) whether based on evidence presented at the retrospective hearing at which the defendant was present the defendant was competent during the trial.

While steps two through four might occur in a single evidentiary hearing, separate proceedings are permissible. When separated—such as they will now be in this case because of our order to remand—the district court may reevaluate the *McGregor* factors at the conclusion of the stage four hearing. At that point after full consideration of the evidence it may become clear that while a retrospective hearing had seemed feasible, in reality it was not. Our evaluation of the *Ford II* court's feasibility determination does not change that situation, and the district court is free to reconsider that determination on remand. We have addressed feasibility here only because it would be futile to remand if the district court had abused its discretion in making the feasibility determination.

Reversed and remanded.