NOT DESIGNATED FOR PUBLICATION

No. 128,040

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

FRANCISCO ALEJANDRO MENDOZA,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; CURTIS SAMPLE, magistrate judge. Submitted without oral argument. Opinion filed September 12, 2025. Affirmed.

*David S. Patrzykont*, of Kansas City, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GARDNER, P.J., COBLE and BOLTON FLEMING, JJ.


PER CURIAM: Francisco Alejandro Mendoza appeals his conviction for stalking. He claims that the district court ignored some evidence and relied on insufficient evidence in finding him guilty following a bench trial. Finding no error, we affirm.


FACTUAL AND PROCEDURAL BACKGROUND

On June 22, 2021, police officers responded to a report of stalking at an elementary school in Johnson County. V.H.G. informed the officers that she worked at

the school and that her ex-boyfriend (Mendoza) had been showing up there to try to contact her. Their relationship had ended a year and a half earlier, but Mendoza had started following her around in April 2021. She stated that she did not report Mendoza sooner because she feared for her children's safety, and that Mendoza's conduct also caused her to fear for her own safety. V.H.G. explained that Mendoza had recently been deported from the United States after being arrested for domestic battery, but he returned to Kansas less than a month later and started following her. And since then, he had unwantedly appeared on several occasions at the school and at another elementary school where V.H.G. previously worked.

The officers spoke to Mark Garcidas, who also worked at the elementary school. He corroborated V.H.G.'s statement, explaining that he had seen Mendoza at the school looking for her several times. He stated he knew that V.H.G. was afraid of Mendoza and did not want him there. Garcidas had seen Mendoza at the school just the day before. He saw him standing near V.H.G.'s car, and when she opened her car door, Mendoza stood by the door and talked to V.H.G. while she sat in the car.

About a month later, the State charged Mendoza with one count of stalking under K.S.A. 2021 Supp. 21-5427. The complaint alleged that Mendoza committed the crime intentionally or recklessly and that his conduct had placed V.H.G. in reasonable fear of her safety or the safety of her immediate family.

This case proceeded to a bench trial in April 2024. The State called V.H.G. to testify during its case-in-chief. Mendoza testified in his defense, denying that his conduct was illegal or inappropriate under the circumstances. Afterward, the State presented rebuttal testimony from Garcidas.

The parties' testimonies showed that V.H.G. and Mendoza started talking over Facebook in 2014 or 2015. They began dating in 2016 and maintained an on-again, off-

2

again relationship for several years. During their relationship, V.H.G. worked as a cleaner for two elementary schools in Johnson County. She started her position at the second school, to which the police were called, during the summer of 2021. V.H.G. testified that she had told Mendoza to leave her alone several times and specifically told him not to go to the schools. Yet Mendoza did not comply and showed up at both schools several times after that. He went to V.H.G.'s most recent school at least two or three times before the police intervened in June 2021. Garcidas also worked at both schools as V.H.G.'s supervisor, and saw Mendoza at the schools on several occasions.

V.H.G. testified that Mendoza was physically, verbally, and emotionally abusive toward her during their relationship. She thus feared Mendoza and told him to stop contacting her and showing up at her work. But Mendoza did not comply. To the contrary, he called and texted V.H.G. daily throughout May and June 2021. During some of these conversations, he threatened V.H.G., saying he would go to her house if she ended the relationship. V.H.G. blocked Mendoza on her phone several times and changed her phone number to avoid him, but Mendoza took her phone from her car to figure out her new number.

V.H.G. also explained that Mendoza had been deported twice, in 2018 and May 2021, before he was arrested in this case. The 2021 deportation occurred after Mendoza was arrested for a domestic battery incident involving V.H.G. During that incident, Mendoza pulled V.H.G. down a set of stairs when she tried to leave his house. V.H.G. indicated, though somewhat unclearly, that Mendoza had also strangled her during this incident. She reported the incident, which led to Mendoza's arrest and deportation. Yet about a month later, Mendoza returned to the Kansas City area and began following V.H.G. again.

During cross-examination, defense counsel asked V.H.G. a line of questions about her conduct to support Mendoza's theory of defense that he did not understand that he

3

was not allowed to contact her. V.H.G. admitted that she continued an on-again, off-again relationship with Mendoza before March 2021. She also admitted that when Mendoza was in Mexico after his deportation in May 2021, he had written several messages to her, and she had sometimes replied. In one of her responses, she told him that she might be pregnant. And after their relationship ended she had offered Mendoza a dog to adopt. V.H.G. admitted that she initially did not tell Garcidas or other coworkers about Mendoza. Still, she maintained that she was afraid of Mendoza and had told Mendoza she was afraid of him. She had stayed in the relationship because Mendoza was insistent and threatening. V.H.G. clarified that her relationship with Mendoza completely ended after the domestic battery incident. She denied having asked Mendoza to get back together with her at any time or having made any plans with him about her possible pregnancy.

Mendoza denied that he had contacted V.H.G. or showed up at her work against her wishes. He testified that V.H.G. had asked him to take food and medicine to her at the schools, and she had never told him that he was no longer allowed to go to the schools. Mendoza also denied that he pulled V.H.G. down the stairs in his house. He claimed that V.H.G. initiated contact with him after he was deported in 2021. He conceded that when V.H.G. was upset with him, she would block him and tell him to stop talking to her, but two or three weeks later V.H.G. would reach out to him again. Mendoza also denied ever threatening V.H.G. and instead claimed that she had threatened many times to report him to the police or immigration officials.

Mendoza also testified that when he returned to Kansas after being deported, he went to V.H.G.'s house and talked to her in the parking lot. He decided to speak to her in person because she had blocked him from contacting her over the phone. Mendoza also testified that he went to V.H.G.'s school in June to ask about her pregnancy. He did not think that he placed V.H.G. in any fear by going to the schools.

During the State's rebuttal, Garcidas testified that he had seen Mendoza at the schools several times, and V.H.G. had told Garcidas that she did not want Mendoza there. V.H.G. disclosed to Garcidas that Mendoza was aggressive toward her, and between February and May 2021, Garcidas had seen bruising on V.H.G.'s arms.

After hearing the evidence, the district court convicted Mendoza of stalking. It found that although Mendoza may have had some confusion, V.H.G. had told Mendoza to stop contacting and following her, yet Mendoza did not comply. The district court thus concluded that at a minimum, Mendoza engaged in reckless conduct that caused V.H.G. a reasonable belief of fear for her safety. The district court noted that although V.H.G. had talked to Mendoza after the domestic battery incident, it was not unusual for a victim of domestic violence to do so.

The district court sentenced Mendoza to 150 days in jail. It ordered Mendoza to serve his sentence concurrent to a separate term that he was already serving in Missouri and credited him 92 days of time served.

Mendoza timely appeals his conviction.

I. THE DISTRICT COURT DID NOT ERR BY DISREGARDING EVIDENCE RELEVANT TO MENDOZA'S CULPABLE MENTAL STATE

Mendoza first argues that the district court erroneously disregarded evidence that V.H.G.'s conduct may have prevented him from forming the culpable mental state required to commit stalking under K.S.A. 2021 Supp. 21-5427. He suggests that the district court's discussion shows that the court ignored evidence related to the "nature" of the parties' relationship. Mendoza also claims that the district court could not have appropriately determined his legal culpability without considering this evidence. Relevant to this argument, the district court found:

"Mr. Mendoza may have been confused. He may have just really wanted to see [V. H. G.], but if she is telling you to leave her alone, to not come here, I don't want to see you here, stop doing this, then you have to stop. And even if you think that she is on-again, off-again or yanking your chain or anything like that, you have to stop. And when you don't stop, you're at the very least recklessly engaging in a course of conduct over these months that placed her in a reasonable belief of . . . fear."

The State references K.S.A. 60-441 as support for rejecting Mendoza's claim. But that statute precludes evidence related to a juror's "assent to or dissent from the verdict or . . . mental processes by which it was determined" when reviewing a valid jury verdict. K.S.A. 60-441. This statute thus does not squarely apply here to a decision by the district court, who is not a juror. Still, it reflects the general principle that we do not permit inquiry into the mental processes of a decisionmaker in a criminal trial.

The State primarily contends that Mendoza's argument is unsupported and unpreserved, so it should be dismissed. It asserts that no Kansas authority supports Mendoza's implied argument that an appellate court may second guess a trial court's rationale for finding a defendant guilty. Rather, the district court was not required to provide any rationale for its decision. We agree.

Despite Mendoza's creative wording for this argument, Mendoza essentially argues that the district court failed to make adequate findings or that the State presented insufficient evidence to support his conviction. But as the State correctly emphasizes, the district court was not required to provide a rationale for its decision. See *State v. Kendall*, 300 Kan. 515, 529, 331 P.3d 763 (2014) (noting in review of insufficient evidence claim that regardless of district court's stated reasoning in support of its finding of guilt, a district court need not explain its decision and may render the equivalent of a general verdict of guilty or not guilty), *abrogated on other grounds by State v. Barnes*, 320 Kan. 147, 563 P.3d 1255 (2025). Mendoza's brief fails to provide any legal basis for his claim, and he fails to explain why his argument is sound despite a lack of authority. See *State v.*

*Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). Although Mendoza indicates that he is not challenging the adequacy of the district court's findings or the sufficiency of the State's evidence in making this argument, we find this argument merely a restyled effort to challenge the sufficiency of the evidence supporting his conviction.

We note, however, that this court is sometimes tasked with deciding a similar question—whether the district court disregarded *undisputed* evidence. See *State v. Ford*, 302 Kan. 455, Syl. ¶ 6, 469-70, 353 P.3d 1143 (2025). But that analysis applies when an appellant challenges a district court's negative finding, which the district court did not make here. See *State v. Douglas*, 309 Kan. 1000, 1002-03, 441 P.3d 1050 (2019) ("When a district judge rules that a party has failed to sustain its burden of proof, a reviewing court applies the standard of review for a negative finding of fact. A '"negative finding will not be rejected on appeal unless the party challenging the finding proves *arbitrary disregard of undisputed evidence*, or some extrinsic consideration such as bias, passion, or prejudice."' [Citation omitted.]" [Emphasis added.]). Here, the district court concluded that the State met its burden of proof.

Additionally, under a negative finding standard, appellate courts cannot "'nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed.'" *Cresto v. Cresto*, 302 Kan. 820, 845, 358 P.3d 831 (2015). We lack authority to reverse the district court's judgment because the court disregarded or gave certain weight to disputed evidence. Reversal is warranted only when the district court ignored undisputed evidence and did so arbitrarily. See *Woodard v. Hendrix*, No. 123,900, 2022 WL 2286922, at *5-6 (Kan. App. 2022) (unpublished opinion) (applying *Cresto*, 302 Kan. at 845); see also *United States v. Howard*, 413 F.3d 861, 864 (8th Cir. 2005) ("A jury is not required to accept exculpatory testimony, even if unrebutted.") (citing *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1328 [9th Cir. 1992]); *United States v. Trull*, 581 F.2d 551, 552 (5th Cir. 1978) (same); *State v. Sturgeon*, No. 98,814, 2007 WL 92657, at *4 (Kan. App. 2007) (unpublished opinion)

(applying this line of cases in rejecting claim that the trial court was required to "give credence to uncontroverted testimony in criminal trials"). Mendoza does not argue that the district court ignored undisputed evidence nor convincingly show that the district court's decision was arbitrary.

True, some of the evidence was undisputed, including that the parties had an on-again, off-again relationship. But Mendoza tacitly concedes that some of the evidence was disputed. We agree that the nature of Mendoza and V.H.G.'s relationship was highly disputed at trial. V.H.G. claimed that Mendoza was abusive and their relationship was often tumultuous, scary, and harmful. V.H.G. also testified that she told Mendoza to stop following her, which Mendoza denied. She and Garcidas also maintained that she did not want Mendoza at the schools after March 2021. To the contrary, Mendoza said that the relationship was relatively normal and if any inappropriate or abusive conduct occurred during the relationship, V.H.G. either caused or committed it. It was the district court's duty, not ours, to weigh the conflicting evidence and to make credibility determinations.

The bottom line is that the record shows that the district court appropriately considered the evidence in making its decision. The district court's finding that Mendoza may have been somewhat confused but still tried to contact V.H.G. after receiving clear directions to stop shows that the district court weighed both parties' testimonies. The district court's finding about Mendoza's possible confusion also shows that the district court appropriately considered his culpability or lack thereof. Mendoza thus fails to convincingly show that the district court abused its discretion or otherwise erred in reviewing the evidence at trial.

## II. SUFFICIENT EVIDENCE SUPPORTS MENDOZA'S CONVICTION

When examining the sufficiency of the evidence in a criminal case, an appellate court reviews all the evidence in the light most favorable to the State to determine

whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts should: (1) "'not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations,'" and (2) "only look to the evidence in favor of the verdict to determine whether the essential elements of a charge are sustained." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022). This court will reverse a guilty verdict because of testimony only "in rare cases," i.e., when "the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt." 316 Kan. at 350.

To secure a criminal conviction, the State must prove every element of each crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Mendoza was charged with stalking, in violation of K.S.A. 2021 Supp. 21-5427. He was convicted under subsections (a)(1) and (a)(2) of that statute. Those provisions require the State to prove that Mendoza:

- Recklessly engaged "in a course of conduct targeted at a specific person which would cause a reasonable person in the circumstances of the targeted person to fear for such person's safety, or the safety of a member of such person's immediate family and the targeted person is actually placed in such fear;" or
- engaged in this type of conduct "with knowledge that the course of conduct will place the targeted person in fear for such person's safety or the safety of a member of such person's immediate family."

Mendoza concedes that he engaged in a course of conduct targeted at V.H.G., and he tacitly concedes that V.H.G. was in fear of her safety. But Mendoza contends that the evidence failed to prove that he acted recklessly and in a way that would cause a reasonable person to fear, or with knowledge that his conduct would cause V.H.G. to fear. He thus argues that the State failed to prove each element of stalking under either subsection—K.S.A. 2021 Supp. 21-5427(a)(1) or (a)(2). He adds that to prove

9

recklessness, the State also needed to show that his conduct was a gross deviation from the standard of care that a reasonable person would use under the circumstances, citing PIK Crim. 4th 52.010 (2021 Supp.).

We find that the evidence sufficiently supports each of the elements necessary to sustain Mendoza's conviction. The crux of his argument is that although V.H.G. told him to stop contacting and following her, her later actions indicated that he did not need to comply with these requests. Mendoza notes that V.H.G. admittedly reengaged in conversations with him after blocking him or telling him to leave her alone. V.H.G. also continued talking to Mendoza after the March 2021 incident, when he pulled her down the stairs. And Garcidas testified that he once saw Mendoza and V.H.G. eating a meal together at one of the elementary schools. Given these circumstances, Mendoza asserts that no rational fact-finder would conclude that he stalked V.H.G. More specifically, he argues that the evidence failed to show that he acted unreasonably, let alone recklessly, by going to the school in June and continuing his efforts to contact V.H.G. after she told him to stop.

This argument largely ignores the parameters of our appellate review because it asks us to reweigh the evidence in Mendoza's favor, which we will not do. See *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024) (appellate court does not reweigh evidence, resolve conflicting evidence, or pass on witness credibility). We also reject Mendoza's implied suggestion that the district court was required to ignore disputed evidence and consider only undisputed facts when making its decision. Nor did the district court have to consider only direct evidence in making its decision, as "a conviction of even the gravest offense can be based entirely on circumstantial evidence." *State v. Darrow*, 304 Kan. 710, 716, 374 P.3d 673 (2016).

Applying these principles and reviewing the evidence in the light most favorable to the State, we find sufficient evidence supporting Mendoza's conviction. K.S.A. 2021

10

Supp. 21-5427(a)(1) requires a person targeted by someone accused of reckless stalking to subjectively fear the accused's course of conduct and to have an objectively reasonable fear of the conduct. The evidence sufficiently supports each of these elements of stalking under K.S.A. 2021 Supp. 21-5427(a)(1). As Mendoza concedes, V.H.G. testified that she told Mendoza to cease contact and to stop following her to work. She also testified that Mendoza's actions caused her to fear for her and her children's safety. And contrary to Mendoza's argument, a reasonable person would fear for their safety under the circumstances as well. The evidence showed that Mendoza went to the elementary school in June after V.H.G. told him not to. He had also recently returned to Kansas after being deported for reasons related to his abuse of V.H.G. in March. And he had a history of abusing V.H.G. throughout their relationship.

Direct and circumstantial evidence also supports the district court's finding of guilt under K.S.A. 2021 Supp. 21-5427(a)(2) (requiring knowledge by the defendant that the conduct will cause the targeted person fear). V.H.G. testified that she told Mendoza that she was afraid of him. Mendoza previously threatened V.H.G. that if she left him, he would go to her house. Mendoza also admitted that when he went to V.H.G.'s house after returning to Kansas from Mexico, he was blocked from contacting V.H.G. over the phone. In addition, V.H.G. also never rescinded her demands for Mendoza to leave her alone. So Mendoza went to V.H.G.'s home and workplace in May and June, unwelcome and without notice. V.H.G. also testified that although she responded to some of Mendoza's messages, she never initiated contact with him after March. The evidence thus showed that Mendoza acted "with knowledge" that V.H.G. would be placed in fear as required to prove stalking under K.S.A. 2021 Supp. 21-5427(a)(2).

CONCLUSION

The district court did not ignore relevant evidence in finding Mendoza guilty of stalking. And the State presented sufficient proof of each element of stalking under

11

K.S.A. 2021 Supp. 21-5427(a)(1) and (a)(2) for the district court to appropriately find Mendoza guilty of the crime beyond a reasonable doubt. We thus affirm the district court's judgment.

Affirmed.