NOT DESIGNATED FOR PUBLICATION

No. 122,077

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID YARBROUGH,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed September 25, 2020. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., STANDRIDGE and GARDNER, JJ.

PER CURIAM: David Yarbrough was convicted in 2011 of multiple sexual crimes. In 2014, Yarbrough filed a timely pro se K.S.A. 60-1507 motion with the district court. Nearly three years later, his counsel filed an amended motion that raised the new claim that Yarbrough was incompetent to stand trial and that his trial counsel was ineffective for not having raised that issue. The district court held a hearing at which Yarbrough presented evidence that he had a low IQ. The district court denied Yarbrough's competency claims as untimely and insufficient. Yarbrough appeals, but we find no reversible error.

1

*Factual and Procedural Background*

In 2011, the State charged David Yarbrough with 19 counts, including three counts of rape, four counts of aggravated indecent liberties with a child, two counts of attempted aggravated indecent liberties with a child, eight counts of aggravated criminal sodomy, and two counts of attempted aggravated criminal sodomy. He allegedly molested his step-granddaughter when she was less than 14 years old. See *State v. Yarbrough*, No. 108,096, 2013 WL 3791793, at *1-5 (Kan. App. 2013) (unpublished opinion). Yarbrough testified in his own defense at trial. But the jury convicted him of three counts of rape, four counts of aggravated indecent liberties with a child, and eight counts of aggravated criminal sodomy.

After his convictions, Yarbrough appealed, this court affirmed the district court, and our Supreme Court denied review. See *Yarbrough*, 2013 WL 3791793. Yarbrough then petitioned for a writ of certiorari, which the United States Supreme Court denied. *Yarbrough v. Kansas*, 574 U.S. 836 (2014).

In September 2014, Yarbrough filed a pro se K.S.A. 60-1507 motion with the district court. In January, February, and August 2015, and March 2016, Yarbrough filed pro se addendums to that motion, raising some new claims and supplementing others. Yarbrough alleged multiple errors by the district court, by counsel, and by the State, none of which are at issue on appeal. None of his many claims alleged that he was incompetent.

Over five years after his trial, Yarbrough first alleged that he was incompetent to stand trial. He did so by an amended motion filed in July 2017 by his counsel, William Dunn. That motion raised two new claims:

(1) Yarbrough's trial counsel, W. Fredrick Zimmerman, was ineffective because he "did not investigate or present the proposition that Mr. Yarbrough was incompetent to stand trial or be sentenced" and

(2) Yarbrough was not competent to stand trial.

In support, Dunn attached a psychiatric assessment that showed Yarbrough had an IQ of 57 when tested in May 2017 and a "mild intellectual disability."

At the hearing on this motion, held March 2018, Yarbrough presented a single witness—Jill Weippert, the mental health clinical supervisor for the El Dorado Correctional Facility and its Oswego satellite. She testified that her staff had performed the Wechsler Abbreviated Scale of Intelligence, second edition, test on Yarbrough in May 2017. The results showed that 99 percent of individuals Yarbrough's age scored better than he and that he had an intellectual disability. Weippert admitted that she could not, however, offer an opinion on whether Yarbrough was legally competent to stand trial because she does not perform competency evaluations and had not been trained in that area.

In a written order, the district court summarily denied Yarbrough's pro se claims. As to the competency claims that Dunn raised, the district court ruled that they were untimely because they were filed outside the one-year time limit for K.S.A. 60-1507 motions, citing *Pabst v. State*, 287 Kan. 1, 21-27, 192 P.3d 630 (2008), and *Thompson v. State*, 293 Kan. 704, 709-14, 270 P.3d 1089 (2011). Under *Thompson,* counsel must seek leave to amend a motion, yet Dunn had failed to do so. And under K.S.A. 2019 Supp. 60-215(c)(2), claims relate back to another motion when they arise out of the same conduct, transaction, or occurrence. The new competency claims did not meet that test. Because the competency claims were filed in June 2017, more than one year after the October 14, 2014 triggering date (the date the United States Supreme Court denied the petition for a writ of certiorari), the court found them untimely. See K.S.A. 2019 Supp. 60-1507(f).

3

But the district court also determined that the competency claims failed on the merits. It found that Yarbrough's expert provided no opinion on his competency and that Yarbrough failed to present evidence that he was incompetent during the trial. The district court also found it curious that neither party sought testimony from Yarbrough's trial attorney, who could have shared his opinion about his competency.

Yarbrough timely appeals.

*Did the District Court Err in Finding Yarbrough's K.S.A. 60-1507 Competency Claims Untimely?*

On appeal, Yarbrough asserts that the district court erred in finding his motion untimely. The State does not address this argument. Instead, it briefs solely the court's finding that no evidence showed Yarbrough was incompetent at the time of trial. Based on the State's abandonment of the untimeliness issue, we consider Yarbrough's motion as if it had been timely filed. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) (we consider issues not adequately briefed to be waived or abandoned). We thus address the merits, as did the district court.

*Did the District Court Err in Denying Yarbrough's K.S.A. 60-1507 Competency Claims?*

Yarbrough argues that, once he placed competency at issue in his K.S.A. 60-1507 motion, the district court had a duty to determine whether a retrospective competency evaluation was feasible. But he also claims that he was incompetent to stand trial. He thus raises both procedural and substantive competency claims. See *State v. Woods*, 301 Kan. 852, 858, 348 P.3d 583 (2015).

4

*Standard of Review*

The district court held an evidentiary hearing on Yarbrough's K.S.A. 60-1507 motion and issued findings of fact and conclusions of law on all issues presented. We review the findings of fact to determine whether they are supported by substantial competent evidence and are enough to support the court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015). But we use an abuse of discretion standard in reviewing a district court's failure to order sua sponte an evaluation of a defendant to determine his competency. *State v. Marshall*, 303 Kan. 438, 447, 362 P.3d 587 (2015). "Judicial discretion can be abused in three ways: (1) if no reasonable person would have taken the view adopted by the trial court; (2) if the judicial action is based on an error of law; or (3) if the judicial action is based on an error of fact." *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

*General legal principles about competency*

"[T]he criminal trial of an incompetent defendant violates due process." *Medina v. California*, 505 U.S. 437, 453, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). Competence is defined by statute. *State v. Shopteese*, 283 Kan. 331, 341, 153 P.3d 1208 (2007). A defendant is incompetent to stand trial when he is charged with a crime and, because of mental illness or defect, is (1) unable to understand the nature and purpose of the proceedings or (2) cannot make or assist in making his defense. K.S.A. 22-3301(1).

> "'[I]f the accused is capable of understanding the nature and object of the proceedings going on against him; if he rightly comprehends his own condition with reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subject his mind may be deranged or unsound.' [Citation omitted.]" *Van Dusen v. State*, 197 Kan. 718, 722-23, 421 P.2d 197 (1966).

See *State v. Barnes*, 293 Kan. 240, 256, 262 P.3d 297 (2011) (same); see also *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (stating constitutional standard is whether the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him or her).

The court presumes a defendant is competent to stand trial. *State v. Stewart*, 306 Kan. 237, 252, 393 P.3d 1031 (2017). When a defendant raises competency, the defendant bears the burden of proving incompetence by a preponderance of the evidence. *Stewart*, 306 Kan. at 252. See *Medina,* 505 U.S. at 449 (finding that a State may presume that the defendant is competent and require him or her to shoulder the burden of proving his or her incompetence by a preponderance of the evidence). But "[a] defendant is not incompetent to stand trial simply because that individual has received or needs psychiatric treatment." *State v. Harkness*, 252 Kan. 510, 516, 847 P.2d 1191 (1993). Nor does a low IQ, standing alone, render a person incompetent to stand trial. *Stewart*, 306 Kan. at 259-60.

"The failure to hold a competency hearing, when 'evidence raises a bona fide doubt as to defendant's competency, is a denial of due process.'" *State v. Foster*, 290 Kan. 696, 704, 233 P.3d 265 (2010). If the judge has reason to believe the defendant is incompetent during the criminal proceeding, the judge must suspend the proceedings and hold a competency hearing. See K.S.A. 2019 Supp. 22-3302(1). Under that statute, a district court judge has a duty to inquire into a defendant's competency should the circumstances warrant:

> "(1) At any time after the defendant has been charged with a crime and before pronouncement of sentence, the defendant, the defendant's counsel or the prosecuting attorney may request a determination of the defendant's competency to stand trial. If, upon the request of either party or upon the judge's own knowledge and observation, the

6

judge before whom the case is pending finds that there is reason to believe that the defendant is incompetent to stand trial the proceedings shall be suspended and a hearing conducted to determine the competency of the defendant." K.S.A. 2019 Supp. 22-3302(1).

*The District Court Did Not Err in Not Holding a Competency Hearing.*

We first examine Yarbrough's procedural claim that the district court should have held a competency hearing. But no one raised Yarbrough's competency to stand trial at any time when his case was pending—after he had been charged and before the pronouncement of his sentence in 2011. And no one filed a competency motion. His July 2017 amended K.S.A. 60-1507 motion was the first anyone mentioned the issue.

Yarbrough contends that after he placed competency at issue in 2017, "the district court had an obligation to pursue an appropriate competency proceeding if such a determination would be feasible." To support his argument, Yarbrough relies on *State v. Ford*, 302 Kan. 455, 353 P.3d 1143 (2015). *Ford* held that a meaningful retrospective competency hearing was feasible and could remedy the district court's failure to comply with K.S.A. 22-3302. 302 Kan. 455, Syl. ¶ 7.

In *Ford*, the defendant, after being charged but before being sentenced, filed a motion under K.S.A. 22-3302 to determine his competency. The district court granted that motion then received an evaluation showing Ford was competent. But the district court failed to hold a competency hearing as required by K.S.A. 22-3302, before Ford pleaded. In a collateral attack, Ford challenged his conviction because he did not have a competency hearing.

The Kansas Supreme Court reasoned that to prevent summarily dismissal, Ford had to establish "from the record or other evidence, that there was a reason to believe he

7

was incompetent to stand trial and a reason to believe the requirements of K.S.A. 22-3302 had not been satisfied." *Ford*, 302 Kan. at 468 (applying the same initial burden in Ford's motion to correct an illegal sentence as if he had filed a motion under K.S.A. 60-1507). Our Supreme Court reviewed the record and found that the district court had ordered a competency evaluation yet had failed to hold a competency hearing, in violation of K.S.A. 22-3302's requirements. *Ford*, 302 Kan. at 469.

Because Ford had met his threshold burden, the court considered whether a retrospective competency hearing was feasible and could remedy the procedural error. *Ford*, 302 Kan. at 471-77. See also *State v. Davis*, 281 Kan. 169, 170, 130 P.3d 69 (2006) (although the district court ordered a competency evaluation, no evaluation took place and no hearing was held), *overruled in part by Ford*, 302 Kan. 455 (2015). *Ford* found that, under those circumstances, a retrospective competency hearing was both feasible and could remedy the error. 302 Kan. at 475.

But Yarbrough's case is unlike Ford's. Yarbrough never moved during his criminal proceeding to determine his competency to stand trial. The district court thus never granted such a motion or made the predicate finding "that there is reason to believe that the defendant is incompetent to stand trial." See K.S.A. 2019 Supp. 22-3302(1). Under these facts, the statutory directive to suspend the proceedings and conduct a hearing was not triggered. See *State v. Donaldson*, 302 Kan. 731, 735, 355 P.3d 689 (2015).

Yarbrough's case is more like Donaldson's, where the district court did not find reason to believe the defendant was incompetent to stand trial. There, as here, the defendant argued that the court *should have* noticed the defendant *might be* incompetent. The Kansas Supreme Court rejected that claim:

> "In both *Davis* and *Murray*, the district court ordered that the competency of the
> defendant to stand trial be determined. Statutorily, that means the court had to make the

8

predicate finding 'that there is reason to believe that the defendant is incompetent to stand trial.' K.S.A. 22-3302(1). No such finding was made in this case and, therefore, under the plain language of the statute, the statutory directive to suspend the proceedings and conduct a hearing was not triggered.

"Donaldson suggests that a prosecution must be suspended if a presiding judge should have noticed that a defendant might be incompetent to stand trial. But the statute requires that the judge make the requisite finding 'that there is reason to believe that the defendant is incompetent to stand trial' before 'the proceedings shall be suspended and a hearing conducted.' K.S.A. 22-3302(1). The statutory reference to 'the judge's own knowledge and observation' simply provides an alternative to a party's request for a determination of competency, *i.e.*, a judge can proceed to make the requisite finding for a competency determination without a party's request." *Donaldson*, 302 Kan. at 735-36..

We reject Yarbrough's claim on that same basis.

K.S.A. 2019 Supp. 22-3302(1) requires the district court to hold a competency hearing only if a party raised the issue between the filing of the charging document and the pronouncement of sentence and if the court has reason to believe the defendant is incompetent. See *Stewart*, 306 Kan. at 252. Because neither of those requirements is met here, the district court did not err in not holding a retrospective competency hearing.

*Yarbrough failed to present evidence to show he was incompetent at the time of trial.*

Yarbrough also raises substantive claims that his trial violated his constitutional rights since he was incompetent to stand trial. He alleges the denial of two constitutional rights:  (1) his right to effective assistance of counsel and (2) his due process rights. To be entitled to relief, Yarbrough must establish by a preponderance of the evidence that his trial counsel or the district court infringed on either of these rights. See K.S.A. 2019 Supp. 60-1507(b). The district court considered both claims but denied them.

9

*Due process*

Yarbrough contends the district court erred in finding that he "failed to establish any evidence of his incompetency at the time of trial." Yarbrough claims that he was tried and convicted while, in fact, incompetent, as the evidence of his low IQ showed.

*Evidence at the K.S.A. 60-1507 evidentiary hearing*

At the evidentiary hearing on Yarbrough's 2017 motion, Yarbrough presented an expert who testified that his IQ when tested in 2017 was 57 and that he was diagnosed as intellectually disabled. But as the district court correctly found, our courts have never declared that a defendant's low IQ alone renders a defendant incompetent to stand trial:

> "Without doubt, Stewart has some level of cognitive impairment because of his low IQ. But we have never declared that a defendant's low IQ, standing alone, renders a person incompetent to stand trial. *Cf. Atkins v. Virginia*, 536 U.S. 304, 318, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002) ('Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial.'). Competency to stand trial addresses the defendant's ability to understand the charges and proceedings and/or assist his or her counsel in defending against those charges. See *Barnes*, 293 Kan. at 256." *Stewart*, 306 Kan. at 259-60.

Yarbrough's expert witness did not suggest that he may be incompetent to stand trial. Rather, she admitted she could not comment on his competency, as the test she administered to him was not a competency evaluation, she was not trained in them, and it was not her area.

The district court also found it curious that Yarbrough did not have his trial attorney testify at the hearing. Yarbrough called no one to testify who was present during trial. Yet persons who saw a defendant's demeanor, responses to questions, and general

comport at trial would likely be valuable witnesses to prove the defendant's lack of competency at trial.

But our caselaw holds that evidence of a low IQ, standing alone, does not render a person incompetent to stand trial. *Stewart*, 306 Kan. at 259-60. Still, in an abundance of caution, we review the other evidence of record to see what it shows about Yarbrough's ability to understand the nature and purpose of the proceedings and to assist in his defense. See K.S.A. 22-3301(1).

*Yarbrough's testimony at trial*

Yarbrough took the stand at trial and testified in his own defense. His testimony does not reflect any confusion or disorientation. Rather, his trial testimony shows that he understood what was happening, could process information, and was able to make rational decisions about it. His answers were coherent and responsive. He never requested clarification or the repetition of a question. His testimony correlates to and tries to refute the testimony against him. He denied that he ever had any sexual contact with the victim and stated that he always slept in a separate room when she and her younger sister stayed over at the house. He stated that the victim had some attitude problems toward him but that they generally got along. Yarbrough testified that he was hurt by her allegations and did not understand why she would make them.

The following exchange, taken from Yarbrough's direct examination, is typical of his testimony.

"[ZIMMERMAN]: All right. The night that—let's go to the 18th of February of 2011, the night that the police came over to your house, do you recall being awakened by your wife?

"[YARBROUGH]: Yes, she did.

"[ZIMMERMAN]:  And what did she—what did she tell you?

"[YARBROUGH]:  She said she was in a panicky mood. She said, Dave, we need to get you up. Honey, they're threatening that Michael called and says you're in danger, you need to get up. I said, what do you mean danger? I mean I just woke up and she said they're on their way down here to kill you because you was in there raping [the victim]. And I was still in the other bedroom, the kids' bedroom where I fell asleep. I was falling asleep, they woke me up and that's when they told me this was going on and [the victim] and [her younger sister] was clear in the other bedroom.

"[ZIMMERMAN]:  I'm sorry?

"[YARBROUGH]:  They were in Grace's [his wife's] bedroom. I'll put it like Gracie's bedroom and my bedroom.

"[ZIMMERMAN]:  Both [the younger sister] and [the victim] were in bed with Grace?

"[YARBROUGH]:  Yes. They were both in there and I was asleep in the other room and I got that rude awakening from my wife telling me the situation that they were coming over to kill me out of my own house."

Our review of Yarbrough's testimony at trial shows nothing either about its manner or its content that may have put his attorney or the court on notice that he did not understand the proceedings or could not assist in his defense.

*Yarbrough's conduct during posttrial proceedings*

Other evidence of Yarbrough's conduct during the case confirms that conclusion. He spoke coherently to the court during sentencing, asserting that the victim had lied about the abuse, then he asked for a "little lighter sentence" and did not allege he had not understood the trial proceedings. His multiple motions and letters that he signed, if not authored, are articulate and rational. For example, his 2015 letter to his first appointed counsel for his K.S.A. 60-1507 proceeding shows his understanding of the facts of his case and the ongoing procedures. It states in part:

12

"It's 3-fold:  The Judge failed to declare a mistrial due to Zimmerman's ineffective Assistance, Trial Counsel was ineffective for not filing any motions which was ineffective assistance, and Appellate Attorney Christina Kerns was ineffective at not catching this and arguing it in her Direct Appeal Brief.

"All the other arguments in the 1507 are pretty much self explan[a]tory, I cited where to find it in the transcripts, and an evidentiary hearing will subp[oe]na the witness to reinforce what they said. If there's an argument you need more clarification on please let me know! There was no real evidence to convict me of this crime, and as you just read about Zimmerman. he was ineffective!

"Please let me know if you need anymore [sic] information. and once again, thank you for being my Attorney, and thank you for your time and attention!"

Nothing in Yarbrough's acts or statements during or after the trial shows that he suffered from any sort of mental incapacity or problem that affected his ability to make decisions, to understand their consequences, or to assist in his defense. The record does not reflect any concern expressed by Yarbrough or anyone else at trial that he may be incompetent. And Yarbrough's acts and statements do not suggest that he was unable to understand the nature and purpose of the proceedings or assist in his defense. See K.S.A. 22-3301(1). Instead, the record shows that throughout the proceedings Yarbrough was actively engaged, showed no confusion about what was happening, and assisted in his defense.

Yarbrough thus showed no reason for anyone to doubt his competency at the time of trial. We thus affirm the district court's denial of Yarbrough's due process claim.

*Ineffective assistance of counsel*

Lastly, we address Yarbrough's claim that his trial counsel was ineffective because he failed to investigate or argue that Yarbrough was incompetent to stand trial or be sentenced.

"To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances and (2) prejudice." *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019). In considering deficiency, we recognize a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability—that is, a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

We first examine whether Yarbrough showed that his trial counsel's performance was deficient. A defendant alleging ineffective assistance of counsel "'must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 (2011). Yarbrough, by relying only on his low IQ, fails to meet that requirement.

Still, we agree that trial counsel's failure to request a competency hearing where evidence raises a doubt about a movant's competence to stand trial may constitute ineffective assistance of counsel:

"The Constitution prohibits a court from trying defendants who are mentally incompetent. See *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). Of all the actors in a trial, defense counsel has the most intimate association with the defendant. Therefore, the defendant's lawyer is not only allowed to raise the competency issue, but, because of the importance of the prohibition on trying those who cannot understand proceedings against them, [he or] she has a professional duty to do so when appropriate. See, e.g., *Vogt v. United States*, 88 F.3d 587, 592 (8th Cir.1996) ('"The failure of trial counsel to request a competency hearing where there was evidence raising

14

a substantial doubt about a petitioner's competence to stand trial may constitute ineffective assistance of counsel.'") (quoting *Speedy v. Wyrick*, 702 F.2d 723, 726 (8th Cir.1983)). In fact, defendants often contend in collateral proceedings that their trial counsel rendered ineffective assistance by *failing* to request a competency hearing. See, e.g., *Clanton*, 826 F.2d at 1357-58." *United States v. Boigegrain*, 155 F.3d 1181, 1188 (10th Cir. 1998).

We have summarized, above, the record showing that no evidence raised a doubt about the movant's competence to stand trial. We summarize, below, the only other evidence we have about what Yarbrough's trial attorney knew.

*Zimmerman's earlier testimony*

Although Yarbrough did not call his trial counsel at his 2017 hearing on the competency issue, his trial counsel, Zimmerman, did testify at Yarbrough's earlier hearing in 2012, closer to the time of trial. Yarbrough had moved for a new trial based on alleged ineffective assistance of counsel on grounds unrelated to Yarbrough's alleged incompetency. There, Zimmerman testified:

- Yarbrough had extensively discussed the case with him;
- Yarbrough had reviewed the District Attorney's file and the video of the victim's interview;
- Yarbrough had discussed strategy with him about cross-examining the victim after seeing the video of her interview;
- Yarbrough had given him information that Zimmerman used in cross-examining the victim;
- Yarbrough had told him about the sleeping arrangements when the children slept at his house;

15

- Yarbrough had suggested that the victim undergo a mental examination; and

- Yarbrough had asked why there was not any DNA after Zimmerman reviewed the victim's medical report with him.

Zimmerman represented Yarbrough for around five months and during his jury trial. He visited Yarbrough in jail at least one or two weekends before trial to help him prepare because Yarbrough wanted to testify at trial. Zimmerman also visited with him one night during trial, reviewing the evidence and preparing for the next day. Yet nothing in Zimmerman's testimony shows that he had a reason to think Yarbrough was incompetent.

We need not decide whether to apply a "good faith doubt" or some other standard here. See *Boigegrain*, 155 F.3d at 1188 (applying the ABA's "good faith doubt" standard, ABA Criminal Justice Standard 7-4.3[c], to ineffective assistance of counsel claim); *State v. Davis*, 277 Kan. 309, 319, 85 P.3d 1164 (2004) (finding attorney ineffective who admitted that he had "reason to doubt" the defendant's competency prior to trial); cf. K.S.A. 22-3302(1) (stating a district court has a duty to inquire into a defendant's competency when the court finds "reason to believe" that the defendant is incompetent to stand trial); *Foster*, 290 Kan. at 704 (finding that the court must hold a competency hearing when the evidence raises a "bona fide doubt" as to defendant's competency);.

Under any of those standards, as our review of the record above shows, Yarbrough failed to present evidence that his trial counsel had any reason to doubt that Yarbrough was competent. Here, as in *Adams*, there are simply no "red flags" in the record to suggest that his counsel should have investigated his mental health. See *State v. Adams*, 310 Kan. 569, 579-80, 465 P.3d 176, 182 (2020) (finding that because the record showed the defendant was engaged in a rational, thoughtful, knowing way throughout the

proceedings, his counsel had no reason to investigate his mental health). Counsel acted reasonably, given the circumstances.

Finding no deficient performance by counsel, we need not reach the question of prejudice.

Affirmed.